No. 17,111.

DILLINGER ET AL. *v.* NORTH STERLING IRRIGATION DISTRICT.
(266 P. [2d] 776)

Decided February 1, 1954   Rehearing denied February 23, 1954.

Mr. JEAN S. BREITENSTEIN, Mr. JAMES D. GEISSINGER, Mr. DEON DREFKE, for plaintiffs in error.

Messrs. KREAGER & SUBLETT, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to plaintiffs in error as Dillingers, and to defendant in error as the District.

The District brought action in the district court of Logan county to obtain a decree adjudging it to be the owner in possession of lands described in the complaint, and that Dillingers (as well as other parties with whom we are not here concerned) be barred, restrained and enjoined from claiming or exercising any right or interest in said property.

Dillingers filed their answer to the complaint, in which they set forth three defenses as follows: (1) A general denial with a prayer that they be adjudged the owners of the land; (2) that they are owners in fee of the surface and an undivided one-eighth interest in the minerals in that portion of the land in dispute — which we will designate as plot A — being that tract particularly described in document No. 6090 of the records of Registrar of Titles, Logan county, and evidenced by Owner's Certificate of Title No. 2763, and request they be adjudged the owners thereof as against the District; and (3) that they are owners in fee of surface and certain mineral rights in remaining land in dispute, which own-

ership is evidenced by deed, and request they be adjudged the owners of said lands as against the claims of the District.

Dillingers and their predecessors in interest have been the record owners in fee simple of the lands in dispute from the time patent issued thereto to the present, and all taxes on said land from the year 1909 to the present have been paid by them. They claimed that fee title is evidenced as to some of the property by warranty deed, and by Owner's Certificate of Title No. 2763 under the Torrens Act, as to the land not included in the former.

It is agreed that the District commenced condemnation proceedings August 20, 1909, in which it sought to condemn the identical lands now in dispute for a right of way across said lands, and that it was stated in the petition in said action that the District needed the right of way for the purpose of constructing a portion of its inlet canal over, across and upon said lands. It further is stipulated that this action was tried to a jury, and that a verdict was returned February 22, 1910, whereby it was found that it was necessary for the District to take the lands, "for the cut, spoil banks, fill and borrow, for the construction and use of the said inlet canal of the North Sterling Irrigation District * * *."

\* \* \*

"We find the value of the property of respondent Budin [the then title owner] actually taken by said petitioner to be $900.00.

"We find the damages to said respondent's property not taken in the sum of $900.00."

It further is agreed that the fee book of the district court under date of May 3, 1910, shows: "Paid to James Budin, as per judgment, $1,359.34." In other entries therein there was reference to the "judgment." However, for some unaccountable reason, and notwithstanding these entries, there is no recorded judgment in the old condemnation action. No judgment of any kind was pronounced by the court on the verdict of the jury. In

this connection the trial court correctly found that, "No final, appealable judgment was ever entered in Civil Action No. 1378, and no rule as required by statute was ever made or caused to be entered in the minutes of this Court."

The land in dispute consists of 60.78 acres and is designated as the "pond" by the parties. It, generally, is bounded on the west by Pawnee Creek and on the east by the dike originally constructed to function as part of the inlet canal. The dike shown on Exhibit B was one bank of the inlet canal, and Pawnee Creek was the other. When the project was first constructed, neither a ditch nor flume was built through or across the "pond." The water was run into the "pond" and backed up Pawnee Creek until it reached a level where it would flow into the inlet canal on the north end of the "pond." The "pond" filled up with silt and weeds and during the intervening years large trees grew up in the area. The silt and weeds were brought to the "pond" through the inlet canal and down Pawnee Creek during floods. By 1943, the effectiveness of the "pond" as a part of the inlet canal was impaired, and in 1948 a ditch was constructed through the bottom of it, in order to more effectively serve the needs of the inlet system.

The witness Wright, engineer and superintendent of the District, testified that the area in dispute is, and for forty years has been, a necessary part of the intake system; that the "pond" is essential in order to handle and control floods down Pawnee Creek; that it is used for diverting flood waters of Pawnee Creek to which the District has decreed rights; and that during the past twenty years he kept a record of emergency high water in the area and during that period there were forty floods varying from 300 to 15,000 second feet. He testified that in the past twenty years there had been eight floods that would have taken "that whole structure out if it hadn't been operating." He was employed by the contractor who made the original installation and has

known the area at all times since the works were installed. He further testified that the "pond," dykes, wasteway and floodway are, and were, integral parts of the intake system of the North Sterling Irrigation District, and that it has been so maintained at all times since its creation. He also testified that at all times since 1927, when he became superintendent, the District had been in exclusive possession of the "pond"; his men had been instructed to "keep all damaging trespassers out of there"; and that cattle had been kept out with the cooperation of the farmers in the "pond" area. Over the period of time within which the "pond" was operated as part of the inlet canal, before and after construction of the ditch in 1948, the District expended approximately $20,000.00 in properly maintaining the pond area.

Other witnesses called by the District testified, generally, to the constant occupation and use to which the pond area was subjected by the District for a period of approximately forty years.

Pertinent portions of the findings of the trial court are as follows:

"The tract of land in question, during the years intervening between the commencement of Civil Action 1378 and the present, has existed as a servient estate and the Court so declares and finds.

\* \* \*

"The Court finds that the above described tract, under the evidence in the case, has been held by The North Sterling Irrigation District, in open, notorious, visible and adverse possession for more than forty consecutive years prior to the commencement of this action; That such possession at the time of the institution of this action had been continuous and uninterrupted for more than four decades; That such adverse possession was and is intentional, actual and antagonistic to any and all claims of each and all of the defendants.

\* \* \*

"The Court further finds that the entire tract involved

in this litigation, as more particularly described hereinabove, is a necessary and integral part of the intake system of the plaintiff corporation; That such tract is necessary to control flood waters in the area and protect the ditches and irrigation structures of plaintiff corporation.

"The Court further finds that exclusive possession of the tract in question has been and is necessary to enable the plaintiff corporation to accomplish the purpose for which it was created and in addition thereto, to enable plaintiff corporation to avail itself of its adjudicated priority to flood waters of Pawnee Creek, which said priority was decreed under date of June 15, 1908, and entitles plaintiff corporation to 540 cubic feet per second of time from said Pawnee Creek.

\* \* \*

"The Court further finds that the construction of a channel through the 'pond area' on or about the year 1948, was not intended to and did not in fact, constitute an abandonment of any part of the 'pond area' or any portion of the lands hereinabove more particularly described.

"The Court finds that under possession of the tract in question, as herein described, for more than forty years prior to the institution of this action, which possession was intentional, actual, under claim of right, and hostile to the record owners of said tract, and which possession was at all times open, notorious and exclusive, that The North Sterling Irrigation District, plaintiff herein, has acquired an easement in and to the entire tract, which is the subject matter of this litigation; \* \* \*.

\* \* \*

"The Court finds that Certificate of Title, No. 2763, Defendant's Exhibit No. 9, does not correctly state the interest and estate acquired by the defendant, Harold Dillinger, and the defendant, Lloyd Dillinger, \* \* \* That the defendants, Harold Dillinger and Lloyd Dillinger, forthwith present Certificate of Title No. 2763, to the Registrar of Titles of Logan County, Colorado, to have

noted thereon the additional restrictions, reservations and exceptions * * *.

"It is further ordered that when said Certificate of Title No. 2763 is presented to the Registrar of Titles for the notation aforesaid, that said Registrar of Titles shall cause to be shown on said Certificate, the easement acquired by the plaintiff in this action under decree of Court."

With reference to that portion of the property not included within the lands described in Certificate of Title No. 2763, the argument of counsel for Dillingers is to the effect that the elements essential to the acquisition of an easement by prescription were not established by the District; and that because the condemnation suit indicated the purpose for which the land was to be used following condemnation thereof as "a part of the inlet canal," the District is bound by that declaration and in 1948 abandoned any easement that it might theretofore have acquired by the construction of the ditch across the pond area. With reference to the registered land, in addition to the above, it is contended that no rights ever were acquired by the District in that tract, due to the express provisions of the statute under which the registration of the land was made.

Questions to be Determined.

■ ■ First: *Was there sufficient evidence before the trial court to sustain its findings that possession of the deeded land in dispute was hostile, under claim of right, open and notorious, exclusive, continuous and actual for the period of eighteen years or more?*

This question is answered in the affirmative. No good purpose would be served in lengthening this opinion by detailing the evidence in addition to that hereinabove mentioned, which abundantly supports the trial court's findings upon the facts essential to the existence of the easement which the court decreed, in so far as the same relates to the land which was not registered. While it is true that evidence was presented which, if believed,

24

might lead to a contrary conclusion, it is not within our province to disturb findings of fact of the trial court which are amply supported by competent evidence. The above applies with equal force to the contention of counsel for Dillingers that the District abandoned any easement acquired when the ditch was dug across the pond area in 1948. The trial court found to the contrary, and that finding is supported by evidence which we deem it unnecessary to set out in detail.

Second: *Where a party asserts an easement allegedly acquired by prescription based upon forty years of possession with continuous, open, notorious and visible use of the claimed easement under a claim of right; and where the property involved was registered under the statute relating to registration of titles to land, and said registration was accomplished prior to the expiration of eighteen years of adverse use by the one claiming an easement; can the expiration of time following said registration be included in determining whether an easement has been acquired by prescription?*

This question is answered in the negative. That portion of the land in dispute which was registered under the Torrens system (as provided for in article 5, chapter 40, '35 C.S.A.) is the N.E. ¼ of the N.E. ¼ of Section 10, Township 7 North, Range 54 West, 6th P.M., Logan county, Colorado. Part of the inlet ditch, the dike, the 1948 ditch and the spillway are located on this land. It at all times since August 27, 1927, has been registered land. The last date of any entry of record in the condemnation suit, to which we have above referred, was May 3rd, 1910. It is obvious that this date is the earliest that could possibly be used in determining the time when a prescriptive user began to run. From this date less than eighteen years had passed when the registration of the land took place.

Section 205, chapter 40, '35 C.S.A., provides: "No title to registered land in derogation of that of the registered owner shall ever be acquired by prescription or adverse

possession." Section 201 of said chapter provides, in substance, that the recipient of the certificate of title holds the same free from claims except those noted on the last certificate of title in the registrar's office, and "except any of the following rights or incumbrances *subsisting*, namely * * * Second — * * * And any *subsisting* right of way or other easement, for ditches or water rights, upon, over or in respect to the land. * * *." (Emphasis supplied.)

█ The trial court undoubtedly had in mind the above-quoted statute when it ordered Dillingers to surrender their certificate for correction. The word "subsisting," as used in the statute, is not used in any technical sense and must be given the meaning which common usage requires. It is defined in Webster's New International Dictionary as follows: "To have existence, to be; to exist or continue to exist." At the time the land in question was registered, the District did not have a "subsisting" easement by prescription, for the reason that only seventeen years of adverse user could possibly have expired. The law requires eighteen years of such use before a prescriptive right can be said to "subsist." From and after August 27, 1927, the District was prevented from acquiring by prescription any rights in the land, which had not fully matured, because of the specific provisions of section 205, chapter 40, '35 C.S.A.

The judgment, in so far as it relates to the unregistered land in controversy, is affirmed. In so far as it relates to the registered land, it is reversed, and the cause remanded with instructions, that as to such land, the trial court will modify the judgment to conform with the views hereinabove expressed.

MR. CHIEF JUSTICE STONE not participating.